# CALEDONIA COUNTY,

## AUGUST TERM, 1876.

[CONTINUED FROM VOL. 49, PAGE 108.]

---

RICHARDS AND OTHERS *v.* STANLEY AND OTHERS.

### [IN CHANCERY.]

*Payment of Mortgage Debt by one of two Tenants in Common of
Equity of Redemption.*

Certain real estate owned by R., but mortgaged to T., was, by direction of S., levied upon by M., whom R. owed, and a certain part of it set off subject to the mortgage, upon which a decree of foreclosure had been obtained. S. paid the decree before it became absolute, and procured a quit-claim deed from T. to M., and subsequently took a quit-claim deed from M. to himself. S. afterwards sold and conveyed the property to A. and H. *Held,* upon a bill by R. to redeem his share, that after the levy, he was tenant in common with M. in the equity of redemption ; that payment by M. operated a redemption for the benefit of both M. and R. ; and that S. and his grantees, who had notice of R's interest, standing upon the rights of M., were no better off than M. would have been if what was done had been done by M. without the interposition of S.

APPEAL from the Court of Chancery.

The bill, which was originally brought by Richards alone, alleged, that on March 4, 1874, the orator Richards was the owner of certain real estate in Concord, consisting of woodland, a saw-mill, a dwelling-house, &c., of the value of about $4,000, which was subject to a mortgage of about $900 to one Turner ; that on that day an execution in favor of one McGonty against him was, by direction of the defendant Stanley, to whom McGonty had sold it, and who then assumed to own and control it, levied upon $\frac{1275}{2600}$ of all of said real estate, subject to said mortgage ; that in March, 1873, Turner had obtained a decree of foreclosure of said mortgage, which would have become absolute at some time in March, 1874, subsequent to the date of said levy ; that on the day

of said levy, it was the orator's intention to make an arrange-
ment to pay said mortgage before the expiration of the time of
redemption, and that he would have done so but for the conduct
of Stanley hereinafter set forth ; that a day or two before the
levy, Stanley told him that as he was to have an interest in said
real estate by virtue thereof, he would take care of the mortgage,
and that the orator would have a large interest in the property
after the satisfaction of both the mortgage and the execution ;
that he would see that his rights were preserved—and that on the
day of the levy Stanley's solicitor told him substantially the same ;
that by reason thereof, and relying thereon, the orator made no
further provision for said mortgage ; that on some day between
the day of levy and March 10th, Stanley paid said mortgage, and
procured Turner to execute a quit-claim deed of the premises to
McGonty, and on the 10th, procured McGonty to execute a deed
thereof to himself, and soon after claimed to be the absolute
owner of all of said property, and to hold the same free from any
right on the part of the orator ; that on May 7th, 1874, Stanley
proceeded, against the orator's express remonstrance, to sell a
part of said property to the defendant Adams, and another part
to the defendants L. D. & L. T. Hazen, but not until the orator
had notified them that he had an interest therein, and that they
must not interfere with it ; that Adams and the Hazens thereupon
took possession of the premises, and ever after kept the same, and
all the rents and profits thereof, and by direction of Stanley kept
the orator out of the use thereof ; that Stanley ever after March
10, 1874, repudiated the right of the orator in the property, and
refused to allow him to redeem, though often requested. *Prayer*,
that the orator be allowed to redeem ; that his title to the prem-
ises be established ; that an account be taken ; and for general
relief.

After the bill was brought, Belden & Ide, solicitors for the ora-
tor, Richards, were admitted as co-orators, it being made to appear
that after litigation was begun, Richards had conveyed his interest
in the premises to them to secure his indebtedness to them, and
for future advances and services, and in trust for the surplus,
and that they held the title of record.

After the testimony had been in part taken, McGonty was cited in as a party defendant, it being made to appear that he claimed an interest in the property.

The defendant Stanley answered, denying that Richards owned the woodland in fee ; admitting that the mortgage was foreclosed, but claiming that the property set off on execution was worth only $2,000 ; alleging that the execution was founded on a note for $1,000 for money loaned to Richards, and was legal and valid ; denying that Richards had any interest in the premises after foreclosure, and that either he or his solicitor by his authority ever agreed to pay the mortgage for the benefit of Richards, or of any one except McGonty ; that, acting therein, as in all these transactions, as agent of McGonty, as Richards well knew, he purchased the mortgage with money raised on his own credit, taking a quit-claim deed to McGonty; that fearing that Richards might take advantage of McGonty who was poor, feeble, and illiterate, he took a quit-claim deed from him ; admitting the sales to Adams and the Hazens, and alleging that they had no notice of Richards's claim until after the sales ; alleging that he received for the property $2100, that he paid for the mortgage $871.43, for rent $68, and for the execution $1274.71, thereby losing $113.14 of McGonty's claim, besides attorney fees, taxes, and other expenses. The defendants L. D. & L. T. Hazen answered, admitting that they purchased the woodland, and that they were in possession thereof, but denying that they had notice before the purchase, that Richards claimed an interest therein, and alleging that they paid $1300, the full value of the property, therefor. The defendant Adams answered, admitting the purchase of a part of the premises, but denying that he had notice before or at the time of purchase that Richards claimed an interest therein, and alleging that he paid $800 for the property purchased. The defendant McGonty answered, alleging that he lent Richards $1000 in June, 1870, Richards then representing that he was worth about $5000; that in 1872 he brought an action to recover it, but that he made little progress, and made Stanley his agent to procure payment ; that Stanley furnished the money to buy the mort-

gagc, and bought it for the benefit of this defendant alone ; and that this defendant conveyed to him merely to secure him.

The answers were traversed and testimony taken. At the hearing before Ross, Chancellor, June Term, 1876, it was decreed, *pro forma*, that the orators were entitled to $\frac{1325}{2655}$ of all of said real estate, subject to a liability to pay that proportion of the decree on the mortgage ; that the defendants account for that proportion of the rents and profits since March 4, 1874 ; and that the cause be referred to a master for an accounting, and to ascertain the sum due in equity upon the decree. Appeal by the defendants.

*O. T. Brown* and *Elisha May*, for the defendants.

Adams and the Hazens were *bona fide* purchasers without notice. Story Eq. Jurisp. ss. 405, 406, 409, 411, 1502.

McGonty became subrogated by purchase to all of Turner's rights. *Bullard* v. *Leach*, 27 Vt. 495.

Stanley having acted as agent of McGonty, is personally liable only in case he exceeded his authority and perpetrated a fraud. Story Agency, s. 133 ; *Clark* v. *Foster*, 8 Vt. 98 ; *Roberts* v. *Button*, 14 Vt. 195.

Belden & Ide purchased with full knowledge, and their title is void. Story Eq. Jurisp. ss. 399, *et seq.*, 403 ; Gen. Sts. c. 65, s. 26.

*Belden & Ide*, for the orators.

A court of equity will look at all the circumstances, and say whether the assignment of the mortgage to Stanley operated as a payment or to open the decree. *Brown* v. *Lapham*, 3 Cush. 554. It operated to open the decree. *Woodward, admr.* v. *Cowdry*, 41 Vt. 496 ; *Cooper* v. *Cole*, 38 Vt. 188. But if not, still, Richards may redeem, because of Stanley's conduct. 1 Hilliard Mort. 67 ; 2 ib. 231 ; *Blodgett* v. *Hobart*, 18 Vt. 422 ; *Pierson* v. *Clayes*, 15 Vt. 93 ; *Smith* v. *Bartholomew*, 42 Vt. 356 ; *Strong* v. *Catton*, 1 Wis. 471 ; *Hoppock* v. *Conklin*, 4 Sandf. Ch. 582 ; *Lockwood* v. *Mitchell*, 19 Ohio, 448 ; *Chase* v. *McLellan*, 49 Me. 375 ; *Williams* v. *Dale*, 3 Johns. Ch. 290.

The orators' rights are not affected by the sales to Adams and the Hazens. They took with notice of Richards's equity. Whatever is enough to put one upon inquiry is enough to affect him with notice. *Stafford* v. *Ballou*, 17 Vt. 329 ; *Blaisdell* v. *Stevens*, 16 Vt. 179 ; *Pownal* v. *Myers*, 16 Vt. 408 ; *Green* v. *Slayton*, 4 Johns. Ch. 38 ; *Woodward* v. *Cowdry*, 41 Vt. 496.

One is not to be treated as an innocent purchaser without notice until he has paid the whole purchase money. *Curtis* v. *Hitchcock*, 10 Paige 399; *Wood* v. *Mann*, 1 Sumner, 506 ; *Snelgrove* v. *Snelgrove*, 4 Des. 274 ; *Harris* v. *Norton*, 16 Barb. 264 ; *Duncan* v. *Johnson*, 13 Ark. 190 ; *Patten* v. *Moore*, 32 N. H. 382 ; *Evarts* v. *Agnes*, 4 Wis. 343 ; *Brown* v. *Welch*, 18 Ill. 343 ; *Warner* v. *Whittaker*, 6 Mich. 133 ; *Kilcrease* v. *Lum*, 36 Miss. 569 ; *Beaty* v. *Whittaker*, 23 Texas, 526 ; *Mitchell* v. *Puckett*, 23 Texas, 573 ; *Wells* v. *Morrow*, 38 Ala. 125 ; *Minor* v. *Willoughby*, 3 Minn. 225 ; Hilliard Vendors, 407, note b.

Levy on real estate being a proceeding *in invitum*, the creditor can hold only what the set-off gives. Here it gives " subject to the mortgage." *Morton* v. *Edwin*, 19 Vt. 77 ; *Collins* v. *Gibson*, 5 Vt. 247.

As the litigation has grown out of defendants' denial of the orators' right to redeem, the orators are entitled to costs. *Hills* v. *Loomis*, 42 Vt. 562 ; *Wallace* v. *Bowen*, 28 Vt. 638.

The opinion of the court was delivered by

BARRETT, J. In the position sustained by the orator Richards to the property covered by the Turner mortgage, and levied on by McGonty subject to that mortgage, he became, after that levy, tenant in common with McGonty of the equity of redemption. A payment of that mortgage by either of such tenants would operate a redemption for the benefit of both, leaving them still tenants in common, with the equitable right in the paying tenant to be reimbursed for so much of the redemption money as he paid beyond his proportionate share, and holding a lien by subrogation upon the common property to secure such reimbursement. Upon the conceded facts in the case, this view alone would give the orator the equitable right he claims in this bill. Stanley and his

grantees stand on the rights of McGonty resulting from his levy, as affected by the redemption of the Turner mortgage: As against the orator, they are no better off than McGonty would be if what has been done had been done by him without the interposition of Stanley.

This would sustain the decree of the Court of Chancery without going further. But if the case be considered in the light of the evidence, we should come to the same result. For Stanley takes the position and character of sponsor for McGonty and Adams and Hazen, by reason of his respective transactions with the orator and with them. According him such position and character, we concur in finding from the evidence, that he gave the orator to understand, and that the orator did understand, that the orator's rights in the property were to remain to him, and to be available to him, to the same intents as if he had, in due proportion, redeemed from the Turner mortgage the property levied on ; and that the orator permitted the matter to go on without redeeming for that reason. We find also that Adams and Hazen are, under the law, affected with sufficient notice of the orator's interest in the property to subject them to the orator's rights as against Stanley.

On this ground also the decree is affirmed.